**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 16-CV-20580-MARTINEZ/GOODMAN**

RAFAEL MERAN, *et al.*,

Plaintiff,

v.

RANK TRADE SERVICES, INC. and
RAFAEL AZNIELLES,

Defendants.
_______________________________________/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, Rank Trade Services, Inc. ("Rank Trade") and Rafael Aznielles ("Aznielles") (collectively referred to as "Defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56(c), move this Court to enter summary judgment in Defendants' favor and against Plaintiffs Rafael Meran ("Meran"), Gilberto Alvarado ("Alvarado") and Michel Chavez ("Chavez").[1] As grounds, Defendants state as follows:

## INTRODUCTION

In this action, Plaintiffs assert that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") by failing to pay them overtime pay for all hours in excess of 40 hours per week. This is not an FLSA "misclassification" case, as there is no dispute that Plaintiff was a non-exempt employee. Rather, this case turns simply on whether Plaintiffs were properly

[1]Defendants have separately filed their Statement of Facts in Support of the instant Motion for Summary Judgment ("Statement of Facts"). All references to the Statement of Facts and corresponding paragraph(s) shall be identified by "SOF__." Defendants hereby incorporate by reference the Statement of Facts as if fully set forth herein.

paid overtime for all hours over 40 that they worked in each workweek, using a Fluctuating Workweek ("FWW") method.[2]

The Court should enter summary judgment because Defendants' use of the fluctuating workweek was proper under 29 C.F.R. § 778.114 as Plaintiffs agreed to it in writing, their hours actually fluctuated, they were always paid the same even when their hours dipped below 40 and Plaintiffs' salary was sufficient to ensure their hourly rate did not dip below minimum wage.

In addition, the following critical facts are undisputed based on Plaintiffs' deposition testimony:

1. Plaintiffs admit that Defendants' time records are accurate and Plaintiffs agree that all their time worked was properly paid and accounted for;
2. Plaintiffs admit they received pay for every minute worked - including the required half time overtime premium - based on the fluctuating workweek;
3. Plaintiffs admit they each signed an agreement in which they acknowledged they would be paid under the fluctuating workweek method; and
4. Plaintiffs admit they received pay stubs for many years which clearly reflected that they were paid under the fluctuating workweek method (a salary for all hours worked above or below 40 and additional half time compensation for all hours over 40 in a workweek);
5. Plaintiffs expressly and openly admitted their claims have no basis in fact or law, and were filed solely because Plaintiffs needed money. Indeed, Chavez testified that when he was offered $100 as part of a DOL-supervised release in connection with a 2013 audit of Rank Trade, to cover any possible inadvertent wage shortage during the preceding two-

[2] The Complaint alleges only a claim under § 207, the FLSA overtime provision; Plaintiffs have never asserted a minimum wage violation under § 206.

year period in which Rank Trade used the very same pay method at issue in this case, he declined this money because he knew he had been properly paid and was not owed any wages! This admission simply is not reconcilable with the pleadings in the Amended Complaint drafted by Chavez's counsel.[3]

Because all of the above is based on undisputed facts and Plaintiffs' own admissions, and because Plaintiffs' counsel was party to Eleventh Circuit precedent dismissing an ***identical claim***, the maintenance of this lawsuit is frivolous and the Court must enter summary judgment.

Even if the court finds Defendants liable, the Court should decline to award liquidated damages as the record demonstrates that any failure to pay overtime was inadvertent and without Defendants' knowledge that they were potentially violating the FLSA. In addition, even if the Court denies summary judgement on the merits, the Court should enter summary judgment on the length of the applicable statute of limitations, because there is no evidence of any willful wage violation and, therefore, no evidence to support a three year limitations period under 29 U.S.C. § 255(a). In addition, Meran signed an enforceable DOL-supervised release of a portion of the claim in this lawsuit.

Finally, the Court should enter judgment for Aznielles because Plaintiffs have adduced no evidence whatsoever to support personal liability against this Defendant

## <u>MEMORANDUM OF LAW</u>

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56

[3] Chavez testified he never met with his attorneys before they filed the Amended Complaint, noir did he review the Amended Complaint before it was filed on his behalf. SOF n.13.

"mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the nonmoving party bears the burden of proof at trial, the moving party satisfies its burden on summary judgment by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986)).

To survive summary judgment, the opposing party "may not rely merely on allegations or denials in its own pleading[s]." Fed. R. Civ. P. 56(e)(2). Rather, it "must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." *Id.* "If the evidence [offered by the nonmoving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]o withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor." *Anderson*, 477 U.S. at 249.

The Court should enter summary judgment for Defendants because: (A) Plaintiffs testified they have no claim; (B) it is undisputed that Plaintiffs were properly compensated under the fluctuating workweek method; (C) There is no evidence to support personal liability against Aznielles; (D) there is no basis to award liquidated damages even if Defendants are liable; and (E) there is no basis to extend the statute of limitations past the standard two-year period set forth in 29 U.S.C. 255(a).

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS BECAUSE PLAINTIFFS TESTIFIED THEY HAVE NO CLAIM

All Plaintiffs have agreed they were fully and correctly paid under the fluctuating workweek method, as discussed below. SOF ¶ 5. Alvarez and Chavez also expressly testified they could not explain why this suit is proceeding, inasmuch as they agree they were fully and correctly paid for all time worked. SOF ¶ 6. Specifically, Chavez testified that if he understood before filing suit what he now understands regarding how the fluctuating workweek method operates "we would not be here" because he simply did not understand how to compute the half time, but he agrees he was correctly paid. *Id.*[4] Chavez further affirmed he never reported any pay discrepancies because he knows he was correctly paid. *Id.* Indeed, Chavez admitted he refused to accept any money from a 2013 Department of Labor audit (they had offered him $100) because he was not owed a penny for the two years covered by that audit. *Id*. Moreover, Chavez ultimately admitted that he filed this lawsuit only because he had lost his job and needed money, not because he was actually owed any regular or overtime wages from Defendants. *Id.* Alvarado similarly admitted that if the fluctuating workweek method is legal, then he was paid all the halftime he was owed and he has no reason to sue Defendants. *Id.*

These admissions are dispositive of Plaintiffs' claims and the Court should enter final summary judgment in favor of Defendants.

## III. PLAINTIFFS WERE PROPERLY PAID FOR ALL HOURS WORKED UNDER THE FLUCTUATING WORKWEEK METHOD

The FLSA requires payment of overtime to nonexempt employees for hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). The Department of Labor ("DOL") has provided alternative ways in which employers may meet the overtime requirements of the

---

[4] *See* note 4 *infra*.

FLSA. The Fluctuating Workweek ("FWW") method of compensation is one system that employers may utilize to meet the FLSA's overtime premium requirements. *Teblum v. Eckerd Corp. of Fla., Inc.*, 2006 U.S. Dist. LEXIS 6406 (M.D. Fla. Feb. 7, 2006), *aff'd*, 225 Fed. Appx. 792 (11th Cir. 2007). The FWW has been codified at 29 C.F.R. § 778.114. It provides, in pertinent part, that:

> (a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.
> . . .
> (c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.

29 C.F.R. § 778.114(a),(c). *See also* DOL Field Operations Handbook, 32b04b.

In simple terms, "under the fluctuating workweek method, the salary is intended to be the employee's straight time compensation for all hours worked in the workweek, regardless of

number. . . . since the salary itself is the straight time component of even the overtime hours, all that remains to be paid for the overtime hours is the additional half time." *Teblum*, *supra*; *Lewis v. Keiser Sch., Inc.*, No. 11-62176, 2012 U.S. Dist. LEXIS 147150 at *10 (S.D. Fla. Oct. 12, 2012).

In order for an employer to utilize the FWW method: (1) the employee's hours must fluctuate from week-to-week; (2) the employee must receive a fixed weekly salary that remains the same, regardless of the number of hours worked during the week; (3) the fixed amount must be sufficient to compensate for all hours actually worked in a week at a rate not less than the legal minimum wage; (4) the employee must have a "mutual understanding" with the employer that he will be paid the fixed salary, regardless of the number of hours worked; and (5) the employee must be paid, in addition to the salary, overtime for all hours over 40 in a given week at a half-time rate. *Lewis, supra*, 2012 U.S. Dist. LEXIS 147150 at *10-11 (citing *Teblum*).

As discussed below, there is no issue of material fact to dispute that each of these elements was satisfied.

**1. Plaintiffs' Hours Actually Fluctuated**

The time sheets and pay stubs provided in the Appendix of Exhibits plainly demonstrate that Plaintiffs' hours fluctuated each week during their employment. SOF ¶ 16. *See, e.g.*, Exhibits G, H, and I (pay stub for pay period ending 11/03/15 showing Meran worked 47.23 and 48.75 hours those weeks, Chavez worked 48.48 and 46.72 hours those weeks, and Alvarado worked 40.12 and 49.48 hours those weeks).

**2. Plaintiffs' Received a Fixed Weekly Salary Regardless of Hours Worked**

The pay records demonstrate, and Plaintiffs have admitted, that Plaintiffs were paid a set salary for all hours worked throughout their employment, regardless of the number of hours

worked. SOF ¶ 5, 12-13, and 18. Indeed, Plaintiffs admitted they were paid this fixed weekly salary even in the multiple weeks in which they worked less than 40 hours, thereby increasing their effective hourly rate and obtaining the benefit of the fluctuating workweek. SOF 5, 19-20.

**3. Plaintiffs' Salary Was Sufficient to Ensure Plaintiffs Were Paid Minimum Wage**

The fixed amount of Plaintiffs' salary was sufficient to compensate for all hours actually worked in a week at a rate not less than the legal minimum wage, inasmuch as the pay records reflect that there was not even a single week during Plaintiffs' employment in which Rank Trade failed to compensate them at a regular hourly rate exceeding the federal minimum wage of $7.25 per hour. *See* Exhibits A through K and SOF ¶ 13.

**4. There was a Mutual Understanding that Plaintiffs Would Receive a Fixed Weekly Salary Regardless of Hours Worked**

It is plain that Plaintiffs had a clear "mutual understanding" with Rank Trade that they would be paid a fixed salary regardless of the number of hours worked, as they each signed an Agreement specifically stating that "I understand and agree that I will be paid under a fluctuating workweek for all hours worked, I understand that I will receive a salary each week for all hours worked." SOF ¶¶ 7-11. This Agreement was signed in Spanish, to ensure Plaintiffs understood what they were signing. SOF ¶ 9.

Plaintiffs' time records also clearly demonstrated to Plaintiffs precisely how they were paid, inasmuch as the pay stubs specified the number of regular and overtime hours, the regular rate of pay in the form of a weekly salary that did not change, and the amount of overtime calculated at a half time rate. SOF ¶ 5. Plaintiffs' acceptance of wages in this format for multiple ***years*** evidences their understanding and mutual consent to being paid a salary for all hours worked. *Garcia v. Port Royale Trading Co.*, 198 Fed. Appx. 845, 846 (11th Cir. 2006); *Davis v.*

*Friendly Express, Inc.,* 2002 U.S. Dist. LEXIS 27098, 3-4 (S.D. Ga. July 3, 2002), *aff'd*, 61 Fed. Appx. 671 (11th Cir. 2003).[5].

In *Garcia*, the Eleventh Circuit affirmed summary judgment for the employer on the propriety of the FWW method holding, "the district court correctly found that Garcia failed to show that he did not have a clear understanding of the FWW method of compensation…. Despite his claims of not understanding how he was paid due to his alleged inability to understand the English language, either written or spoken, *he did understand how much money he was paid each week. He also knew that his hours fluctuated each week and that once he executed the fixed salary for fluctuating hours agreement, the manner in which he was compensated had changed. For almost three years after the execution of the agreement, Garcia began receiving a base salary regardless of the number of hours he worked and received additional half-time for each hour over 40.*" *Garcia,* 198 Fed. Appx. at 846 (emphasis added).

[5] We note that 29 C.F.R. § 778.114 does not require that the employee understand how the fluctuating workweek *operates.* Rather, by its terms, the regulation expressly requires only that there be an understanding between the employee and employer that the employee will be paid a fixed salary for all hours worked "whatever their number." Even Plaintiff Meran, who claims he did not understand how the fluctuating workweek system worked because he *chose* not to read the FWW Agreement, admitted he understood that he was paid a fixed salary for all hours worked and also understood that he was paid something extra for overtime whenever he worked in excess of 40 hours in a week. SOF ¶¶ 5, 12. It is well established that the "clear and mutual understanding requirement, is limited to the specific elements stated in the regulation and thus does not require that an employee understand the manner in which his or her overtime pay is calculated." *See Davis supra* (internal citations omitted); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (8th Cir. 2001) (§ 778.114 only requires that there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number); *Teblum, supra,* at *7 (clear mutual understanding is limited to § 778.114 requirement); DOL Opinion Letter, FLSA 2009-3 (Jan. 14, 2009). The understanding requirement does not extend to how overtime premiums are calculated. *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39 (lst Cir. 1999); DOL Opinion Letter, *supra* (same).

Similarly, in *Davis v. Friendly Express, Inc.* the court granted summary judgment to the employer even though the plaintiffs maintained that no clear and mutual understanding existed about how they were paid. *Id.* Despite plaintiffs' asserted confusion, the court held that they "received a regular lesson — in the form of their paychecks — about how the fluctuating workweek plan operates," because their "pay stubs showed a base amount of pay and the number of hours worked[.]" 2002 U.S. Dist. LEXIS 27098 at *3-4 (S.D. Ga. July 3, 2002), *Davis* was affirmed by the Eleventh Circuit. 61 Fed. Appx. 671 (11th Cir. 2003). *See also* DOL Opinion Letter, FLSA 2009-3 (Jan. 14, 2009) ("where employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the FWW method of compensation as to her employment").

Here, not only was the FWW agreement provided to Plaintiffs **in Spanish** and signed, Plaintiffs pay stubs actually stated the number of regular hours and overtime hours that they were paid for each week, as well as the amount of fixed salary they were provided with and the amount of overtime at the half time rate. SOF ¶¶ 5, 9, 11-12 and 18. Indeed, each Plaintiff has admitted they understood they were paid a fixed salary for all hours worked, and they continued to work *for years* under this understanding. *Id.* at 5-6, 10, 12-13,

As *Garcia* was litigated by Plaintiffs' own counsel, their maintenance of this lawsuit has no basis whatsoever in fact or law – **it has been directly rejected by the controlling circuit court** – and Defendants are entitled to summary judgment in their favor.

**5. Plaintiffs Admit They Were Paid the Correct Half Time Overtime Premium For All Hours Worked in Excess of 40 in any Workweek**

Plaintiffs admitted, and the time and pay records substantiate, that Plaintiffs were paid, in addition to their fixed salary, overtime for all hours over 40 in a given week at a half time rate. SOF ¶¶ 5-6, 12-13, 20-21.[6]

In light of the above, it is clear that the fluctuating workweek was appropriately used in this case, and summary judgment should be entered in favor of Defendants on the propriety of this method of pay.

## IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS AS TO ANY CLAIM FOR OVERTIME PRIOR TO TWO YEARS PLAINTIFFS FILED THEIR COMPLAINT

A claim for overtime wages under the FLSA must be "commenced within two years after the cause of action accrued... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To establish willfulness, the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

In order to prove a "willful violation" of the FLSA, Plaintiffs must show that Defendants either knew their conduct was a violation of the FLSA or showed a reckless disregard of the conduct prohibited by the statute. *See Hamilton v. Emborq Management* Co., No. 608-CV-677-ORL-28DAB, 2009 WL 3668871, at *3 (M.D. Fla. Oct. 26, 2009). "Mere negligence is insufficient to support a finding of willfulness." *McLaughlin*, *supra* at 135. Instead, Plaintiffs must come forward with <u>convincing</u> evidence. *See Reich v. Department of Conservation & Natural Resources, State of Ala.*, 28 F.3d 1076, 1084 (11th Cir. 1994) (Eleventh Circuit refused

[6] To the extent that Plaintiffs point to their last weeks of employment, where they were paid less than their normal weekly salary, this practice is expressly permitted by the Department of Labor. *See* DOL Field Operations Handbook at § 32b04b(c).

to find "willful" behavior despite strong evidence of the employer's violation). "An employer knowingly violates the Act if he disregards the minimum wage laws deliberately or intentionally . . . ." *Davila v. Menendez*, 717 F.3d 119, 1185 (11th Cir. 2013) (*citing McLaughlin*, 486 U.S. at 133). "In other words, an employer does not commit a willful violation if he acts unreasonably, but not recklessly, in determining his legal obligation under the Act." *Davila*, 717 F.3d at 1185. Therefore, if an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions are not considered willful and the two year statute of limitations should be applied. *McLaughlin, supra*; *Hamilton*, 2009 WL 3668817, at *5; *Saxton v. Young*, 479 F. Supp. 2d 1243, 1253 (N.D. Ala. 2007) (Plaintiffs burden to show willfulness is a demanding one in that even if an employer acted unreasonably, if the employer's actions were not reckless in determining its legal obligations under the FLSA, such action is not willful). The issue of willfulness may be determined on summary judgment without proceeding to a jury. *See Hamilton, supra; Mayorga infra.* Moreover, and importantly, "[f]or the willfulness issue on which the statute of limitations turns, ***the burden is on the employee***." *Rodriguez v. Farm Stores*, 518 F. 3d 1259, 1274 (11th Cir. 2008).

Courts in this district have not hesitated to grant summary judgment on claims which attempt, without any evidence, to extend the statute of limitations based on a conclusory claim of "willfulness." For example, in *Mayorga v. Deleon's Bromeliads, Inc.*, 2013 U.S. Dist. LEXIS 106065 (S.D. Fla. July 26, 2013), Judge Moreno entered partial summary judgment (at the motion to dismiss stage) on a complaint which sought, on its face, overtime compensation going outside the statute of limitations applicable to the FLSA. The plaintiffs in *Mayorga* filed their complaint in January 2013 but sought overtime compensation going back to January 2010. *Id.* at *13. The Defendants moved to dismiss and for summary judgment based on the statute of

limitations. Judge Moreno held that "Plaintiff proffered no evidence of willfulness on the part of Defendants. Therefore, the Court will apply a two-year statute of limitations. . . . The Court finds that the statute of limitations has expired as to all claims for overtime compensation occurring before January 10, 2011 and, therefore, all claims occurring before January 10, 2011 are time-barred." *Id.* at *13-14.

Here, Plaintiffs appear to seek overtime for claims going back to 2010, inasmuch as they claim their employment began in 2010 and they falsely assert they were not paid overtime throughout their employment. Amend. Compl. ECF No. 30, at ¶¶ 9-11. Under a plain reading § 255(a), however, any claims for overtime preceding the three-year period before this lawsuit was filed are undisputedly time-barred. Moreover, Plaintiffs have failed to assert even a *single fact* to suggest the alleged failure to pay overtime (if there was any such failure) was willful. Indeed, there is no such evidence, and, therefore, there is no basis to extend the applicable limitations period past two years.

To the contrary, the record reflects that Rank Trade took extensive steps to ensure it complied with the FLSA and the FWW requirements, such as requiring Plaintiffs to review, approve, and personally sign each time sheet to ensure all time worked was correctly captured (and Plaintiffs admit it was). SOF ¶ 3. Rank Trade also ensured that each Plaintiff signed an agreement acknowledging that they were required to report to Management any time they felt they were underpaid or anytime there was a time clock error. SOF ¶¶ 7-12. These actions are not the actions of an employer which intentionally and recklessly seeks to escape the FLSA's requirements.

Based on the same reasoning as *Mayorga* and the additional cases set forth above, the Court should limit the duration of Plaintiff Meran's actionable claim (if any) to the period

between February 18, 2014 and March 15, 2015[7] and limit the claims of Alvarado and Chavez to a period of two years prior to the date they filed their Amended Complaint on July 8, 2016. The Court should enter judgment for Defendants as to any claims preceding these dates.

## V. EVEN IF THE COURT FINDS THAT DEFENDANTS ARE LIABLE, THE COURT SHOULD DECLINE TO AWARD LIQUIDATED DAMAGES

Even if Plaintiffs were able to meet their burden of proof on the substantive FLSA claim, which they cannot, Defendants acted in good faith. Consequently, liquidated damages are not appropriate.

Liquidated damages under the FLSA can be avoided where a defendant can provide "plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987); *Tumulty v. FedEx Ground Package System, Inc.*, No. C04~1425P, 2005 WL 1979104 (W.D. Wash. Apr. 16, 2005); *see also Kroll v. Home Depot USA, Inc.*, No. ClV.A. CV202—113, 2003 WL 23332905 (S.D. Ga. Aug. 20, 2003). "A district court has the discretion [] to decline to award double damages . . . if the employer shows that it acted in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. Good faith is an honest intention to ascertain what the FLSA requires and to act in accordance with it." *See Tumully, supra* at *5 (internal citations omitted). One way that an employer can satisfy its burden of showing good faith is to provide evidence that it had objective authority that what it was doing complied with the FLSA. *See id.*

As set forth in the preceding section, Defendants are able to meet this burden, as they can show that they took affirmative steps to ensure the legality of implementing the FWW method

[7] Meran testified that he is only asserting a claim through May 2015 even though he worked through December 2015. SOF ¶ 13 and n.18 thereto.

and in fact did so. *See Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 640-41 (8th Cir. 2001) (no liquidated damages owed by defendant who took affirmative steps to comply with FLSA including consultation with DOL prior to implementing FWW method).

There is no evidence in this case that Defendants acted in any way other than good faith Specifically, Rank Trade took careful pains to calculate the FWW each and every week of Plaintiffs' employment. SOF ¶¶ 14-24. It also required Plaintiffs to review, approve, and personally sign each time sheet to ensure all time worked was correctly captured (and Plaintiffs admit it was). SOF ¶¶ 2-5, 18. Rank Trade also ensured that each Plaintiff signed an agreement acknowledging that they were required to report to Management any time they felt they were underpaid or anytime there was a time clock error. *Id.* ¶¶ 7-12. Plaintiffs all agree they signed this agreement, which reflects Rank Trade's good faith effort to ensure it was consistently in compliance with FLSA pay requirements. *Id.* Finally, and notably, Plaintiffs were paid substantial salaries totaling hundreds of dollars even in weeks they did not work a single minute. SOF ¶¶ 18-19. This is not required under the FLSA, and Rank Trade's payment of such sums demonstrates its good faith effort to treat employees fairly and to pay them above and beyond what is legally required.

Based on the foregoing, the Court should hold Plaintiffs are not entitled to liquidated damages as a matter of law.

## VI. THE COURT SHOULD ENTER SUMMARY JUDGMENT AS TO INDIVIDUAL LIABILITY AGAINST DEFENDANT AZNIELLES

Even if the Court declines to grant summary judgment in its entirety, the court should grant summary judgment to Defendant Aznielles as to personal employer liability under the FLSA.

The FLSA creates a private right of action against any "employer" who violates its

minimum-wage or overtime provisions. 29 U.S.C. § 216(b). While the Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as any person acting directly or indirectly 'in the interests of an employer in relation to an employee'" Plaintiffs have failed to adduce any evidence whatsoever that Aznielles is their employer as that term is used in the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)).

The Eleventh Circuit has held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). However, the Eleventh Circuit has "made clear that in order to qualify as an employer for this purpose, an officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel*). In *Patel* the Eleventh Circuit held that the defendant, who was both the president and vice-president of a corporation, as well as a director and a principal stockholder, was *not* an employer for FLSA purposes, because he did not maintain operational control over those matters directly related to the plaintiff's pay and day-to-day employment. *Patel*, 803 F.2d at 638.

Courts in this district have routinely dismissed employer-liability claims under the FLSA where the claim alleged nothing more than a bare bones allegation that the putative individual defendant is, in fact, an "employer" as defined by the Act. For example, in *Gonzalez v. Old Lisbon Rest. & Bar L.L.C.*, 820 F. Supp. 2d 1365 (S.D. Fla. 2011) the plaintiff merely alleged that one of the defendants was an "employer" because "the related activities between the two limited liability companies, performed through unified operation and common control, are being

done for a common business purpose." *Id.* at 1368-1369. The court dismissed the amended complaint, holding "this paragraph is insufficient to state a claim under a joint enterprise theory because it contains only bare legal conclusions and *does not specifically allege any actual facts describing Defendants or their businesses*." *Id.* (emphasis supplied).

Similarly, in *Kendrick v. Eagle Int'l Grp., LLC,* No. 08-80909-CIV, 2009 U.S. Dist. LEXIS 107178 (S.D. Fla. Nov. 17, 2009), the court dismissed an FLSA complaint against the individual defendant in an overtime case where the plaintiff "failed to allege a single fact to support her legal conclusion that [defendant] . . . is an employer under the FLSA." *Id.* at *3. Finally, in *Diaz v. U.S. Century Bank*, No. 12-21224, 2012 U.S. Dist. LEXIS 89618 (S.D. Fla. June 27, 2012) the court granted a motion to dismiss because "Plaintiffs' complaint did not offer sufficient factual foundation to establish that Century Bank was Plaintiffs' 'employer' pursuant to the Act. Plaintiffs for the most part have only made very vague assertions concerning their employment relationship with Century Bank." *Id.* at *5. While the complaint did state that the defendants "were responsible for controlling Plaintiffs' work hours and pay . . . the Plaintiffs have not provided anything more than those general, unsubstantiated claims. . . .leaving the extent of Century Bank's actual control over Plaintiffs to mere speculation." *Id. See also Perez v. Muab, Inc.*, No. 10-62441-Civ, 2011 U.S. Dist. LEXIS 22275, at *1-2 (S.D. Fla. March 7, 2011) (dismissing a complaint after concluding that enterprise coverage allegations were "devoid of facts" when plaintiff alleged only that defendant "is an enterprise engaged in an industry affecting commerce, is an employer as defined by 29 U.S.C. § 203(d) and (s)(1), which has employees subject to the provisions of the FLSA . . . in the store where Perez was employed.").

Like its sister courts, this Court should grant summary judgment as to the claim against Aznielles as Plaintiffs have no facts to show that "employer" liability can or should extend to

Mr. Aznielles. Indeed, while Aznielles owns the corporate Defendant, Aznielles was not Plaintiffs' direct supervisor. SOF ¶ 26. Nor did Aznielles oversee Rank Trade's timekeeping system or payroll; this was overseen by Human Resources Director Monica Grasso. *Id.* Meran never discussed his time or pay with Aznielles or Grasso, even though he saw them on a daily basis and the time clock was only feet from Aznielles and Grasso's offices. *Id.* Neither did the remaining Plaintiffs. *Id.*

Under the circumstances, Plaintiffs failed to prove that employer liability extends to Aznielles and the Court should enter summary judgment as to the claim against Aznielles.

## VII. MERAN RELEASED ALL CLAIMS AGAINST DEFENDANTS PREDATING JUNE 22, 2013

Under well-established law, claims under the FLSA can be settled and released by employees. Specifically, 29 U.S.C. § 216(c) allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employees is supervised by the Secretary of Labor. *See* 29 U.S.C. 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

Meran signed a release provided by the Department of Labor on August 30, 2013. SOF ¶ 26. Meran spoke to the DOL investigator in Spanish and "fully" understood what she told him and he accepted $711.91 in exchange for a release of any wage claim for the period 6/18/11 to 6/22/13. *Id*. By signing it he acknowledged that the aforementioned sum was what he was owed in wages for that entire two year period. *Id*.[8]

Because Meran released any claim predating June 22, 2013, Defendants are entitled to

[8] Notably, Meran admitted he was paid the same way both before and after the date of the release, SOF ¶ 27, wholly undermining the statement of claim he filed in this case alleging that he is owed tens of thousands of dollars for a shorter period than that covered by the DOL release.

summary judgment on such claims even if the Court were to find an FLSA violation in this case and also find that the two year limitations period did not apply.

**CONCLUSION**

The Fluctuating Workweek method of compensation is well established as a legal method for complying with the overtime requirements of the FLSA. 29 C.F.R. § 778.114. The conditions imposed on employers that utilize this method of compensation are clearly set forth in the regulation, as well as, the case law interpreting that regulation. As set forth in the memorandum above, Plaintiffs are unable to provide evidence to show that Defendants in any way failed to abide by each condition of the FWW method. Indeed, Plaintiffs repeatedly admitted they were fully and properly paid, and they could not proffer any explanation for the maintenance of this action.

Even if the court finds Defendants liable, the Court should decline to award liquidated damages as the record demonstrates that any failure to pay overtime was inadvertent and without Defendants' knowledge that they were potentially violating the FLSA. In addition, even if the Court denies summary judgement on the merits, the Court should enter summary judgment on the length of the applicable statute of limitations, because there is no evidence of any willful wage violation and, therefore, no evidence to support a three year limitations period under 29 U.S.C. § 255(a). Moreover, Meran signed an enforceable DOL-supervised release of a portion of the claim in this lawsuit.

Finally, the Court should enter judgment for Aznielles because Plaintiffs have adduced no evidence whatsoever to support personal liability against this Defendant.

Respectfully submitted,

/s/ Mendy Halberstam
Pedro P. Forment, Esq.
Florida Bar No. 61026
Email: pedro.forment@jacksonlewis.com
Mendy Halberstam, Esq.
Florida Bar No.: 68999
E-mail: halbersm@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7604
Facsimile: (305) 373-4466

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notice of Electronic Filing generated by CM/ECF and Electronic Mail.

s/ Mendy Halberstam
Mendy Halberstam, Esq.

**SERVICE LIST**

**United States District Court for the Southern District of Florida**
***Rafael Meran, et al. v. Rank Trade Services, Inc. et al.***

**Case No. 16-CV-20580-MARTINEZ/GOODMAN**

J.H. Zidell, Esq.
Florida Bar No.0010121
E-mail: zabogado@aol.com
J.H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, FL 33141
Telephone: (305) 865-6766
Facsimile: (305) 865-7167

*Attorneys for Plaintiff*

Pedro P. Forment, Esq.
Florida Bar No. 61026
E-mail: pedro.forment@jacksonlewis.com
Mendy Halberstam, Esq.
Florida Bar No. 68999
E-mail: mendy.halberstam@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

*Attorneys for Defendants*

4835-3912-4284, v. 1