UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 16-20580-CIV-MARTINEZ-GOODMAN**

RAFAEL MERAN, et al.,

    Plaintiff,

vs.

RANK TRADE SERVICES, INC. and
RAFAEL AZNIELLES,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the Court on the motion for summary judgment (the "Motion") filed by Defendants Rank Trade Services, Inc. ("Rank Trade") and Rafael Aznielles ("Aznielles"). [ECF No. 40]. The Court, having reviewed the motion, the supporting documents, and the undisputed facts, finds that summary judgment is appropriate for the reasons discussed more fully herein and, accordingly, grants Defendants' Motion and dismisses this case with prejudice.

## INTRODUCTION

In this action, Plaintiffs Rafael Meran ("Meran"), Gilberto Alvarado ("Alvarado") and Michel Chavez ("Chavez") assert that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") by failing to pay them overtime pay for all hours in excess of 40 hours per week. This is not an FLSA "misclassification" case, as there is no dispute that Plaintiff was a non-exempt employee. Rather, this case turns simply on whether Plaintiffs were properly

paid overtime for all hours over 40 that they worked in each workweek, using the Fluctuating Workweek ("FWW") method.[1]

The Court enters summary judgment because Defendants' use of the fluctuating workweek was proper under 29 C.F.R. § 778.114 as Plaintiffs agreed to it in writing, their hours actually fluctuated, they were always paid the same even when their hours dipped below 40 and Plaintiffs' salary was sufficient to ensure their hourly rate did not dip below minimum wage.

In addition, the following critical facts are undisputed based on Plaintiffs' deposition testimony:

1. Plaintiffs admit that Defendants' time records are accurate and Plaintiffs agree that all their time worked was properly paid and accounted for;

2. Plaintiffs admit they received pay for all time worked - including the required half time overtime premium - based on the fluctuating workweek;

3. Plaintiffs admit they each signed an agreement in which they acknowledged they would be paid under the fluctuating workweek method;

4. Plaintiffs admit they received pay stubs for many years which clearly reflected that they were paid under the fluctuating workweek method (a salary for all hours worked above or below 40 hours and additional half time compensation for all hours over 40 in a workweek); and

5. Plaintiffs admitted at deposition that their claims have no basis in fact or law.

Because all of the above is based on undisputed facts and Plaintiffs' own admissions, the Court must enter summary judgment.[2] The Court also enters summary judgment for Aznielles

---

[1] The Complaint alleges only a claim under § 207, the FLSA overtime provision; Plaintiffs have never asserted a minimum wage violation under § 206.

because Plaintiffs have adduced no evidence whatsoever to support personal liability against this Defendant.

I.   **THE UNDISPUTED FACTS**

Based on the Record, the following facts are undisputed:

1. Plaintiffs were formerly employed by Defendant Rank Trade Services, Inc.

2. All of the time records produced by Defendants accurately record Plaintiffs' time worked from 2013 through their termination date.

3. Plaintiffs also signed each weekly time sheet, affirming the accuracy of these time sheets.[3]

4. The pay records produced by Defendants in support of summary judgment accurately contain the pay stubs correlated to each time sheet.

5. Plaintiffs' pay stubs reflect that they were paid a salary for all hours worked (whether above or below 40 hours). The pay stubs reflected, and Plaintiffs were in fact paid for, half time for all overtime hours (which hours were listed on the stub).

6. Plaintiffs knew how to read their pay stubs, and it reflected that as they worked more hours, "instead of it [the amount per hour] going up, what you are doing is subtracting [the effective hourly rate]."[4]

---

[2] Because Defendants are entitled to final summary judgment on the merits, the Court need not address whether any alleged FLSA violations were willful so as to consider extending the two-year limitations period, or whether Meran signed a DOL-approved release cutting off all claims preceding June 23, 2013. For the same reason, the Court need not address whether Defendants acted in good faith so as to avoid liability for liquidated damages.
[3] A few of the early time sheets were unsigned, but Plaintiffs testified that all the time sheets are correct in any event.
[4] Which is precisely how the fluctuating workweek method operates.

7. Alvarez and Chavez expressly testified they could not explain why this suit is proceeding, inasmuch as they agree they were fully and correctly paid for all time worked. Indeed, after some prodding, Chavez admitted that he filed this lawsuit only because he had lost his job and needed money, not because he was actually owed any regular or overtime wages from Defendants.

### A. Plaintiffs Signed an Agreement Agreeing to be Paid Under the Fluctuating Workweek Method

8. At the time they commenced employment, Plaintiffs executed a document entitled "Agreement to Report All Alleged Discrimination/Harassment, Workplace Injuries/Illnesses, Error(s) in Pay, or Unlawful or Inappropriate Conduct of Any Type." The Court refers to this document as the "Agreement."

9. In the Agreement, Plaintiffs stipulated that "as a term and condition of my employment with Rank Trade Services, Inc., I acknowledge and affirm that I must:"

> Immediately notify the management, in writing, of any discrepancies in my paycheck. The written notification must be received by the management within three (3) business days from the date my direct deposit voucher is available to me or within three (3) business days of receiving my payroll check, whichever is earlier. If I do not provide timely written documentation of a discrepancy, it is because have been properly paid for all hours worked during the pay period.
>
> Additionally, I understand and agree that I will be paid under a fluctuating workweek for all hours worked, I understand that I will receive a salary each week for all hours worked and will be paid overtime for any hours worked over 40 during the workweek, based on the regular rate of pay for that particular workweek.
>
> I understand that, should I have any question about this policy, I must immediately alert the management and have any such questions answered so that I can assume full responsibility for complying with this policy. My signature below confirms that I have read the above and agree to the conditions stated and that I

have obtained all the necessary clarifications or answers I need to fully comply with this policy.

10. Plaintiffs read and understand Spanish, and the Agreement was in Spanish. Plaintiffs understood the contents of the Agreement.

11. Plaintiffs acknowledge the Agreement says they will be paid under a fluctuating workweek arrangement, and Chavez and Alvarado expressly testified they understood they would be paid under FWW method and admitted they never reported pay errors because they were correctly paid. Meran, however, claims he did not understand what the words fluctuating workweek meant. Critically, however, Meran testified flatly that, "had [he]read [the agreement] on September 29, 2011, that's exactly what [he] would understand exactly [that he will be paid under a fluctuating workweek arrangement], but [he] **chose not to read** [the agreement]." All Plaintiffs acknowledge that the Agreement does say they would be paid a fixed salary for all hours worked and extra pay as overtime for hours over 40 based on the fixed salary; this is also what they understood the Agreement to say.

### B. Plaintiffs Were Correctly Paid All Sums Due

12. As reflected in the pay records authenticated by Plaintiffs, Plaintiffs were paid the following base salaries to cover all hours worked for the entire duration of the longest possible statute of limitations applicable under 29 U.S.C. § 255(a):

**Alvarado**: Base salary of $432.00 per week from July-2013[5] through April 2014 and $456.00 per week from April 2014 through his termination in 2015.

**Chavez**: Base salary of $540.00 per week from January 2014 through October 2015 and $576.00 per week from November 2015 through his termination in early 2016.

---

[5] Alvarado filed his Amended Complaint [ECF No. 30] on July 8, 2016, so the longest possible statute of limitations goes back to July 2013.

**Meran**: Base salary of $444.00 per week in July and August 2013 and 468.00 per week from September 2013 through his termination in December 2015.

13. The workweek was from 12:01 a.m. each Monday and extended to 11:59 p.m. each Sunday.

14. Plaintiffs kept their time by clocking in and out using a time clock.

15. As reflected in the pay records, Plaintiffs' hours varied from week to week.

16. At the conclusion of each bi-weekly pay period, Rank Trade would calculate the number of hours worked the preceding two weeks, based on the time card records, to determine if any Plaintiff was entitled to overtime compensation.

17. Throughout their employment, Plaintiffs base weekly salary did not vary based on the number of hours they worked. Thus, if Plaintiffs worked less than 40 hours in a workweek, they still were compensated at their fixed weekly salary.

18. If Plaintiffs worked *more* than 40 hours, their fixed salary was divided by the total number of hours worked to determine their regular hourly rate for that week. Rank Trade then divided this number in half to determine the half time rate. Rank Trade then multiplied the half time rate by the number of hours of overtime Plaintiffs worked to determine the amount of overtime pay due to Plaintiffs. Plaintiffs were then paid this higher amount of the fixed salary with the additional half time paid for all overtime hours.

19. For example, in the final full pay period of Meran's employment, the period ending 12/13/2015, Meran clocked in 47.93 and 45.27 hours for the two weeks covered by this pay period. These amounts were then divided by $468.00, Meran's salary for all hours worked. This leaves a regular rate of $9.76 and $10.34 for each week in the pay period ($468/47.93 and $468/45.27) and a half-time rate of $4.88 and $5.17. The half time rate was then multiplied by

the number of overtime hours Meran worked in the pay period (7.93 x $4.88 = $38.69 in week one and 5.27 x $5.17 = $27.24 in week two) and then added to the base fixed salary of $468 for a total amount of pay due of $506.72 in week one and $495.24 in week two. Meran was in fact paid exactly $1,001.96 this pay period ($506.72 + $495.24) in compliance with the FWW regulation. Alvarado and Chavez also sampled their pay records and agreed the pay was correctly computed using the fluctuating workweek method and they agreed they were correctly paid.

20. Plaintiffs were paid less than their normal salary only in the last week of employment. In this week, Plaintiffs were not in payroll status the entire week.

21. Specifically, Plaintiffs generally worked 6 days each week. In Plaintiffs' final week, they were paid a pro-rated portion of their salary by dividing the applicable salary against a 40 hour workweek and multiplying the resulting hourly rate by the number of hours actually worked and paying this pro-rated sum. For example, in Meran's final week of employment, he worked 16 hours. His $468 salary was divided by 40 hours ($11.70/hr) and then multiplied by 16 hours worked. Meran was thus paid $187.20.

22. In all their weeks of employment, Plaintiffs' salary never failed to meet the full minimum wage for all hours worked.

### C. Aznielles Has No Individual Liability

23. While Aznielles owns the corporate Defendant, Aznielles was not Plaintiffs' direct supervisor. Nor did Aznielles oversee Rank Trade's timekeeping system or payroll; this was overseen by Human Resources Director Monica Grasso. Plaintiffs never discussed their time or pay with Aznielles or Grasso, even though Plaintiffs saw them on a daily basis and the time clock was only feet from Aznielles and Grasso's offices. Plaintiffs agree that Aznielles treated

them fairly and would always be available if they had any concerns, but they did not approach him or others about any pay-related concerns because they were correctly paid.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court enters summary judgment for Defendants because: (a) Plaintiffs testified they have no claim; (b) it is undisputed that Plaintiffs were properly compensated under the fluctuating workweek method; and (c) there is no evidence to support personal liability against Defendant Aznielles.

## III. PLAINTIFFS TESTIFIED THEY HAVE NO CLAIM

All Plaintiffs have agreed they were fully and correctly paid under the fluctuating workweek method, as discussed below. *See* Defendants' Statement of Undisputed Facts, [ECF No. 41 at ¶ 5]. Alvarez and Chavez also expressly testified they could not explain why this suit is proceeding, inasmuch as they agree they were fully and correctly paid for all time worked. *Id.* ¶ 6. Specifically, Chavez testified that if he understood before filing suit what he now understands regarding how the fluctuating workweek method operates "we would not be here" because he simply did not understand how to compute the half time, but he agrees he was

-8-

correctly paid. *Id.*[6] Chavez further affirmed he never reported any pay discrepancies because he knows he was correctly paid. *Id.* Indeed, Chavez admitted he refused to accept any money from a 2013 Department of Labor audit (they had offered him $100) because he was not owed a penny for the two years covered by that audit. *Id.* Moreover, Chavez ultimately admitted that he filed this lawsuit only because he had lost his job and needed money, not because he was actually owed any regular or overtime wages from Defendants. *Id.* Alvarado similarly admitted that if the fluctuating workweek method is legal, then he was paid all the halftime he was owed and he has no reason to sue Defendants. *Id.*

These admissions are dispositive of Plaintiffs' claims and the Court should enter final summary judgment in favor of Defendants.

## IV. PLAINTIFFS WERE PROPERLY PAID FOR ALL HOURS WORKED UNDER THE FLUCTUATING WORKWEEK METHOD

The FLSA requires payment of overtime to nonexempt employees for hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). The Department of Labor ("DOL") has provided alternative ways in which employers may meet the overtime requirements of the FLSA. The Fluctuating Workweek ("FWW") method of compensation is one system that employers may utilize to meet the FLSA's overtime premium requirements. *See Teblum v. Eckerd Corp. of Fla., Inc.*, 2006 U.S. Dist. LEXIS 6406 (M.D. Fla. Feb. 7, 2006), *aff'd*, 225 Fed. Appx. 792 (11th Cir. 2007). The FWW has been codified at 29 C.F.R. § 778.114. It provides, in pertinent part, that:

> (a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever

---

[6] *See* note 7 *infra.*

-9-

> hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.
> 
> . . .
> 
> (c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.

29 C.F.R. § 778.114(a), (c). *See also* DOL Field Operations Handbook, 32b04b.

In simple terms, under the fluctuating workweek method, the salary is intended to be the employee's straight time compensation for all hours worked in the workweek, regardless of number since the salary itself is the straight time component of even the overtime hours, all that remains to be paid for the overtime hours is the additional half time. *See Lewis v. Keiser Sch., Inc.*, No. 11-62176, 2012 U.S. Dist. LEXIS 147150 at *10 (S.D. Fla. Oct. 12, 2012).

In order for an employer to utilize the FWW method: (1) the employee's hours must fluctuate from week-to-week; (2) the employee must receive a fixed weekly salary that remains the same, regardless of the number of hours worked during the week; (3) the fixed amount must be sufficient to compensate for all hours actually worked in a week at a rate not less than the legal minimum wage; (4) the employee must have a "mutual understanding" with the employer that he will be paid the fixed salary, regardless of the number of hours worked; and (5) the employee must be paid, in addition to the salary, overtime for all hours over 40 in a given week at a half-time rate. *See Lewis*, 2012 U.S. Dist. LEXIS 147150 at *10-11.

As discussed below, there is no issue of material fact to dispute that each of these elements was satisfied.

### 1. Plaintiffs' Hours Actually Fluctuated

The time sheets and pay stubs provided in the Appendix of Exhibits plainly demonstrate that Plaintiffs' hours fluctuated each week during their employment. [ECF No. 41 ¶ 16]. This factor is easily satisfied.

### 2. Plaintiffs' Received a Fixed Weekly Salary Regardless of Hours Worked

The pay records demonstrate, and Plaintiffs do not dispute, that Plaintiffs were paid a set salary for all hours worked throughout their employment, regardless of the number of hours worked. [ECF No. 41 ¶ 5, 12-13, and 18]. Indeed, Plaintiffs admitted they were paid this fixed weekly salary even in the multiple weeks in which they worked less than 40 hours, thereby increasing their effective hourly rate and obtaining the benefit of the fluctuating workweek. *Id.* ¶ 5, 19-20. This element of the FWW test is also met.

### 3. Plaintiffs' Salary Was Sufficient to Ensure Plaintiffs Were Paid Minimum Wage

The fixed amount of Plaintiffs' salary was sufficient to compensate for all hours actually worked in a week at a rate not less than the legal minimum wage, inasmuch as the pay records reflect that there was no week during Plaintiffs' employment in which Rank Trade failed to compensate them at a regular hourly rate exceeding the federal minimum wage. [ECF No. 41 at ¶ 13]. Thus, this factor of the FWW test also supports summary judgment.

### 4. There was a Mutual Understanding that Plaintiffs Would Receive a Fixed Weekly Salary Regardless of Hours Worked

It is plain that Plaintiffs had a clear "mutual understanding" with Rank Trade that they would be paid a fixed salary regardless of the number of hours worked, as they each signed an Agreement specifically stating that "I understand and agree that I will be paid under a fluctuating workweek for all hours worked, I understand that I will receive a salary each week for all hours worked." [ECF No. 41 at ¶¶ 7-11]. This Agreement was signed in Spanish, to ensure Plaintiffs understood what they were signing. *Id.* ¶ 9.

Plaintiffs' time records also clearly demonstrated to Plaintiffs precisely how they were paid, inasmuch as the pay stubs specified the number of regular and overtime hours, the regular rate of pay in the form of a weekly salary that did not change, and the amount of overtime calculated at a half time rate. *Id.* ¶ 5. Plaintiffs' acceptance of wages in this format for multiple *years* evidences their understanding and mutual consent to being paid a salary for all hours worked. *Garcia v. Port Royale Trading Co.*, 198 Fed. Appx. 845, 846 (11th Cir. 2006); *Davis v.*

*Friendly Express, Inc.*, 2002 U.S. Dist. LEXIS 27098, 3-4 (S.D. Ga. July 3, 2002), *aff'd*, 61 Fed. Appx. 671 (11th Cir. 2003).[7]

In *Garcia*, the Eleventh Circuit affirmed summary judgment for the employer on the propriety of the FWW method holding, "the district court correctly found that Garcia failed to show that he did not have a clear understanding of the FWW method of compensation.... Despite his claims of not understanding how he was paid due to his alleged inability to understand the English language, either written or spoken, *he did understand how much money he was paid each week. He also knew that his hours fluctuated each week and that once he executed the fixed salary for fluctuating hours agreement, the manner in which he was compensated had changed. For almost three years after the execution of the agreement, Garcia began receiving a base salary regardless of the number of hours he worked and received additional half-time for each hour over 40.*" *Garcia*, 198 Fed. Appx. at 846 (emphasis added).

---

[7] The Court notes that 29 C.F.R. § 778.114 does not require that the employee understand how the fluctuating workweek *operates*. Rather, by its terms, the regulation expressly requires only that there be an understanding between the employee and employer that the employee will be paid a fixed salary for all hours worked "whatever their number." Even Plaintiff Meran, who claims he did not understand how the fluctuating workweek system worked because he *chose* not to read the FWW Agreement, admitted he understood that he was paid a fixed salary for all hours worked and also understood that he was paid something extra for overtime whenever he worked in excess of 40 hours in a week. [ECF No. 41 at ¶¶ 5, 12]. It is well established that the "clear and mutual understanding requirement, is limited to the specific elements stated in the regulation and thus does not require that an employee understand the manner in which his or her overtime pay is calculated." *See Davis supra* (internal citations omitted); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (8th Cir. 2001) (§ 778.114 only requires that there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number); *Teblum, supra*, at *7 (clear mutual understanding is limited to § 778.114 requirement); DOL Opinion Letter, FLSA 2009-3 (Jan. 14, 2009). The understanding requirement does not extend to how overtime premiums are calculated. *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39 (1st Cir. 1999); DOL Opinion Letter, *supra* (same).

Here, not only was the FWW agreement provided to Plaintiffs in Spanish and signed, Plaintiffs pay stubs actually stated the number of regular hours and overtime hours that they were paid for each week, as well as the amount of fixed salary they were provided with and the amount of overtime at the half time rate. [ECF No. 41 ¶¶ 5, 9, 11-12 and 18]. Indeed, each Plaintiff has admitted they understood they were paid a fixed salary for all hours worked, and they continued to work *for years* under this understanding. *Id.* at 5-6, 10, 12-13,

As *Garcia* was litigated by Plaintiffs' own counsel, they have no basis to maintain this lawsuit and Defendants are entitled to summary judgment in their favor.

### 5. Plaintiffs Were Paid the Correct Half Time Overtime Premium For All Hours Worked in Excess of 40 in any Workweek

Plaintiffs admitted, and the time and pay records substantiate, that Plaintiffs were paid, in addition to their fixed salary, overtime for all hours over 40 in a given week at a half time rate. [ECF No. 41 at ¶¶ 5-6, 12-13, 20-21].[8]

In light of the above, it is clear that the fluctuating workweek was appropriately used in this case, and summary judgment will be entered in favor of Defendants on the propriety of this method of pay.

## V. SUMMARY JUDGMENT AS TO INDIVIDUAL LIABILITY AGAINST DEFENDANT AZNIELLES

In addition to granting summary judgment based on the propriety of the FWW method, the court grants summary judgment to Defendant Aznielles as to personal employer liability under the FLSA.

The FLSA creates a private right of action against any "employer" who violates its

---

[8] To the extent that Plaintiffs point to their last weeks of employment, where they were paid less than their normal weekly salary, this practice is expressly permitted by the Department of Labor. *See* DOL Field Operations Handbook at § 32b04b(c).

minimum-wage or overtime provisions. 29 U.S.C. § 216(b). While the Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as any person acting directly or indirectly 'in the interests of an employer in relation to an employee'" Plaintiffs have failed to adduce any evidence whatsoever that Aznielles is their employer as that term is used in the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)).

The Eleventh Circuit has held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo,* 803 F.2d 632, 637-38 (11th Cir. 1986). However, the Eleventh Circuit has "made clear that in order to qualify as an employer for this purpose, an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel*). In *Patel* the Eleventh Circuit held that the defendant, who was both the president and vice-president of a corporation, as well as a director and a principal stockholder, was not an employer for FLSA purposes, because he did not maintain operational control over those matters directly related to the plaintiff's pay and day-to-day employment. *Patel*, 803 F.2d at 638.

The Court grants summary judgment as to the claim against Aznielles because Plaintiffs have no facts to show that "employer" liability can or should extend to Mr. Aznielles. Indeed, while Aznielles owns the corporate Defendant, Aznielles was not Plaintiffs' direct supervisor. [ECF No. 41 at ¶ 26]. Nor did Aznielles oversee Rank Trade's timekeeping system or payroll; this was overseen by Human Resources Director Monica Grasso. *Id.* Plaintiffs never discussed their time or pay with Aznielles or Grasso, even though Plaintiffs saw them on a daily basis and

the time clock was only feet from Aznielles and Grasso's offices.

Under the circumstances, Plaintiffs failed to prove that employer liability extends to Aznielles and the Court enter summary judgment as to the claim against Aznielles.

## CONCLUSION

The Fluctuating Workweek method of compensation is well established as a legal method for complying with the overtime requirements of the FLSA. 29 C.F.R. § 778.114. The conditions imposed on employers that utilize this method of compensation are clearly set forth in the regulation, as well as the case law interpreting that regulation. As set forth above, Plaintiffs are unable to provide evidence to show that Defendants in any way failed to abide by each condition of the FWW method. Indeed, Plaintiffs repeatedly admitted they were fully and properly paid, and they could not proffer any explanation for the maintenance of this action.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendants' Motion for Summary Judgment [ECF No. 40] is **GRANTED**.

2. This case is **DISMISSED with prejudice**.

3. Final Judgment shall be entered by separate order.

4. This case is **CLOSED**, and all pending motions are **DENIED as MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 28 day of April, 2017.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record